IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL WHITTALL,

      Plaintiff,                           No. CIV S-05-1629 WBS GGH

    vs.

HENRY SCHEIN, INC., et al.,

      Defendants.                     <u>MEMORANDUM</u>

_____/

<u>INTRODUCTION</u>

        Previously pending on this court's calendar for March 30, 2006, was plaintiff's motion to compel productions of documents. Lawrance Bohm appeared on behalf of plaintiff. Dawn Irizarry appeared by telephone for defendants. Having reviewed the joint statement filed March 24, 2006, the court now issues the following reiterating the orders made at hearing with further discussion.

<u>BACKGROUND</u>

        Plaintiff is proceeding on the first amended complaint, filed in superior court, and removed to this court on August 15, 2005. Plaintiff was hired by defendant Altatec Biotechnologies, Inc. ("Altatec") on or about July 28, 2003, as Director of Operations. Plaintiff alleges that at the time he entered into a written contract with Altatec, he was made aware that

\\\\\

\\\\\

1

Henry Schein, Inc.[1] ("Schein") was a potential purchaser of assets.  Therefore, the employment contract contained a severance provision:

> ...on sale of the company, Employee [plaintiff] hereby agrees and acknowledges that the new company may not wish to continue him as an employee.  Therefore, in the event the purchaser of the company does not offer continued employment to Employee, Employee shall be entitled to receive four months or $36,666.67 as severance payment.
>
> ...This provision shall not apply if Employee is offered a position substantially similar to that then held by Employee by the acquiring corporation...To be substantially similar the offer must be similar in the form of monthly compensation, commission and bonus.

Amended Complaint at 3 (emphasis deleted)[2]

Schein purchased Altatec's assets in December, 2003, and claims that plaintiff's employment was at will.

After plaintiff began employment, he claims that defendant Gorin represented on numerous occasions that his compensation would be equal to or more than he made with Altatec, and that nothing would change for employees during the transition.  Plaintiff contends he relied on defendants' promises of commission wages, title, and authority, although he was not given a contract, but both he and other employees who did have commission contracts were not given commissions.  After the purchase was complete, plaintiff alleges that although he was not receiving commissions in his paycheck, Gorin assured him that he was working on a compensation package and that the sales reps "would be taken care of."  Based on his serious reservations and the alleged fact that defendants broke promises to co-employee May, plaintiff requested severance from Altatec, or what was at the time left remaining of Altatec.  Altatec

---

[1] Defendant Camlog is a subsidiary of the Schein company and its business includes selling dental implants.

[2] Evidently, since this was a purchase of assets and not shares, the general rule of purchaser non-liability for the debts, obligations and agreements of the purchased entity would apply.  Plaintiff indicated that he would have looked to Altatec for satisfaction of the severance provision.  The court understood from the parties' briefing that Altatec may no longer be in existence at this time as a legal entity.

refused based on Schein's alleged misrepresentations regarding the terms and conditions of plaintiff's employment. Thereafter, plaintiff was terminated on July 14, 2004, due to "serious concerns" about his performance, which surprised plaintiff in light of his high sales production. During the entire half year time period, plaintiff had stopped applying for other jobs which paid substantially more than the base salary paid by Schein, and lost opportunities. The period during which plaintiff claims he did not receive compensation and commissions was January through July, 2004.

The first amended complaint contains claims for failure to pay wages, fraud/concealment, negligent misrepresentation/omission, false promise, breach of contract, negligent interference with prospective economic advantage, intentional interference with contractual advantage, and wrongful termination in violation of public policy. The discovery cutoff is June 30, 2006.

Plaintiff now moves to compel production of documents, and is concerned because defendants have represented that they will not allow witnesses to answer questions pertaining to planned operations of their company at depositions scheduled between April 5 and 11, 2006, in New York.

DISCUSSION

A.  Choice of Law

Because the subject matter jurisdiction for this action is based on diversity of citizenship, the court must ascertain the appropriate law, federal or California, for discussion of the issues. In this diversity action, questions of substantive privilege are governed by state law. Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993).[3] See also First Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 574, 576 (N.D. Cal. 1995); Bank of the

---

[3] Despite the observations in a few cases that Pagano had been implicitly overruled by the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling ever took place.

3

1  West v. Valley Nat'l Bank of Ariz., 132 F.R.D. 250, 251 (N.D. Cal. 1990).  However, matters

2  going to the procedure for invocation of such privilege, e.g., preparation of privilege logs, are

3  entirely federal in nature.  Eureka Financial Corp v. Hartford Acc. & Indem. Co. 136 F.R.D. 179,

4  182; see Fed. R. Civ. P. 26 (b)(5).  Determination of relevance is a federal matter.

5        "Though a federal court in a diversity action is to apply the substantive law of the

6  forum in which it sits, discovery, as a procedural matter, is governed in a federal court only by

7  the Federal Rules of Civil Procedure and state discovery practices are irrelevant.  See 8 Wright &

8  Miller, Federal Practice and Procedure: Civil § 2005 (1970)."  American Ben. Life Ins. Co. v.

9  Ille, 87 F.R.D. 540, 542 (D.C. Okl. 1978).

10     B. Document Requests

11        The requests at issue seek documents pertaining to compensation paid to other

12  salespeople, the company's due diligence documents, and documents describing planned

13  operations.

14        1. Standards

15        Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party, including the
> existence, description, nature, custody, condition, and location of
> any books, documents, or other tangible things and the identity and
> location of persons having knowledge of any discoverable matter.
> For good cause, the court may order discovery of any matter
> relevant to the subject matter involved in the action.  Relevant
> information need not be admissible at the trial if the discovery
> appears reasonably calculated to lead to the discovery of
> admissible evidence.

22        The advisory committee comments make clear that the intent of the amendment

23  was to narrow the scope of discovery: "The rule change signals to the court that it has the

24  authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to

25  the parties that they have no entitlement to discovery to develop new claims or defenses that are

26  not already identified in the pleadings."  The court, however, retains the discretion, for good

cause, to expand discovery to any matter relevant to the subject matter. As the advisory committee notes: "The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

### 2. Camlog Employee Compensation Information

Requests 12-17 - This group of requests seeks documents identifying compensation paid to employees May, Taylor, Deets, Freer, Williams and Stanton.

Plaintiff claims the requested information is relevant because some of these employees were hired at the same time or after plaintiff, and performed the same or similar functions as plaintiff. Plaintiff seeks information as to contracts identifying compensation and plans for future compensation, and wages paid and actual earnings in order to assess his lost wages and general damages. Plaintiff argues that some employees received promises related to pay but were not paid in accordance therewith, indicating an intentional practice by defendants to mislead employees. Defendants resist discovery based on privacy interests and relevance.

In regard to claims of privacy privilege as asserted by a corporation on its own behalf:

> A 1974 amendment to the California Constitution added article I, section 1, which states: "'All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.' (Italics added.)" (Board of Trustees v. Superior Court (1981) 119 Cal.App.3d 516, 524, 174 Cal.Rptr. 160.) "The drive behind the constitutional amendment was an acknowledgment that '[f]undamental to our privacy is the ability to control circulation of information.' (White v. Davis [1975] 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222], ...)" (Palay v. Superior Court, supra, 18 Cal.App.4th at p. 932, 22 Cal.Rptr.2d 839.) However, "[t]he constitutional provision simply does not apply to corporations. The provision protects the privacy rights of people." (Roberts v. Gulf Oil Corp. (1983) 147 Cal.App.3d 770, 791, 195 Cal.Rptr. 393.) Therefore, Ameri-Med has no standing to assert a constitutional right to privacy. (Id. at p. 793, 195 Cal.Rptr. 393.) It does not mean, however, Ameri-Med has no privacy rights.

> "Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists. Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances. United States v. Hubbard [D.C.Cir.1980] 650 F.2d 293 speaks to this point: 'However, we think one cannot draw a bright line at the corporate structure. The public attributes of corporations may indeed reduce pro tanto the reasonableness of their expectation of privacy, but the nature and purposes of the corporate entity and the nature of the interest sought to be protected will determine the question whether under given facts the corporation per se has a protectible privacy interest....' (At pp. 306-307, fns. omitted; ...) [¶] It is clear to us that the law is developing in the direction that the strength of the privacy right being asserted by a nonhuman entity depends on the circumstances. Two critical factors are the strength of the nexus between the artificial entity and human beings and the context in which the controversy arises." (Roberts v. Gulf Oil Corp, supra, 147 Cal.App.3d at pp. 796-797, 195 Cal.Rptr. 393.)

Ameri-Medical Corp. v. Workers' Comp. Appeals Bd., 42 Cal. App. 4th 1260, 1287-88, 50 Cal. Rptr. 2d 366, 383-84 (1996).

The right to privacy of individuals, for which defendants have a right to assert on behalf of absent third parties, see Craig v. Municipal Court, 100 Cal. App. 3d 69, 77, 161 Cal. Rptr. 19 (1979), is a powerful privilege under California law.

> Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution. [FN3] (Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652, 656, 125 Cal.Rptr. 553, 542 P.2d 977; Dompeling v. Superior Court (1981) 117 Cal.App.3d 798, 808, 173 Cal.Rptr. 38.) The constitutional right of privacy is not absolute; it may be abridged to accommodate a compelling public interest. (City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 131, 164 Cal.Rptr. 539, 610 P.2d 436; Loder v. Municipal Court (1976) 17 Cal.3d 859, 864, 132 Cal.Rptr. 464, 553 P.2d 624; White v. Davis (1975) 13 Cal.3d 757, 775, 533 P.2d 222.) One such interest, evidenced by California's broad discovery statutes, is "'the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings.'" (Britt v. Superior Court (1978) 20 Cal.3d 844, 857, 143 Cal.Rptr. 695, 574 P.2d 766.) When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced. (Valley Bank of Nevada v. Superior Court, supra, 15 Cal.3d 652, 657, 125 Cal.Rptr. 553, 542 P.2d 977.) Even where the balance weighs in favor of disclosure of private information, the scope of the disclosure will be narrowly

6

> circumscribed; such an invasion of the right of privacy "'must be drawn with narrow specificity'" and is permitted only to the extent necessary for a fair resolution of the lawsuit. (Britt v. Superior Court, supra, 20 Cal.3d 844, 856, 859, 143 Cal.Rptr. 695, 574 P.2d 766; City and County of San Francisco v. Superior Court (1981) 125 Cal.App.3d 879, 883, 178 Cal.Rptr. 435.)

Moskowitz v. Superior Court, 137 Cal. App. 3d 313, *315, 316, 187 Cal. Rptr. 4(1983).[4]

Both corporate and individual privacy rights are at issue here. In carefully balancing the interests of the parties, especially the individuals, the court finds that plaintiff has not sufficiently demonstrated that his need for other individual's payment records outweighs the state privacy privilege. In computing damages, to the extent other persons' payments are at all pertinent to plaintiff, such information is pertinent only in a collective context. Although plaintiff's misrepresentation/fraud claims do require state of mind evidence, and a persistent failure on the part of defendants to honor payment representations would be relevant on that score, plaintiff must do more to overcome privacy privileges than rely on the allegations of the complaint. Plaintiff might have come forward with signed waivers by the individual's involved; he may have presented deposition evidence where an individual testified that he or she was "cheated" by defendants. However, as the record stands now, plaintiff's showing is insufficient.[5]

Plaintiff's request for co-employee payment records is presently denied.

3. Due Diligence on Camlog's Purchase of Assets

Request 20 - Documents relating to any due diligence conducted in relation to the assets of Altatec.

---

[4] Thus, the "compelling interest" test for state privacy rights, at least in areas not normally recognized to be treading on traditionally very private interests, e.g., procreation, is something less than the federally stated test for the compelling interest necessary to overcome a fundamental right.

[5] The court recognizes that a protective order is in place to prohibit widespread dissemination of the requested information. Nevertheless, the mere existence of a protective order does not automatically trump privacy privileges. If this were so, then state courts would have so held.

7

Defendants represented at hearing that there are no responsive documents to this request, that their due diligence report relates solely to their European operations. Defendant shall submit a declaration by the appropriate official to this effect, within ten days of this order.

    4.  <u>Planned Operations of Camlog</u>

<u>Request 36</u> - documents describing planned operations of the dental implant sales division.

Plaintiff argues that defendants' misrepresentations regarding planned operations induced him into accepting his employment. Specifically, if plaintiff had known that defendants' marketing plan was completely different from what had been explained to him at the time of his hiring, he would not have accepted employment because based on his extensive sales experience, he would have known defendant's plan was doomed to fail.

While this specific assertion appears not to be relevant to any stated claim in the amended complaint, this information is relevant to allow plaintiff to defend against defendants' factual assertion that he was fired for poor performance. Based on that relevance, plaintiff's motion is granted as to this request, but only as to documents which relate to the method by which plaintiff or his particular group were to perform their sales and/or managerial duties.

<u>Request 37</u> - Documents forecasting the growth and/or profitability of the company, as limited to the dental implant sales division.

Plaintiff contends this discovery is necessary for his damage expert to calculate lost wages. Plaintiff's request is granted.

<u>Request 38</u> - Reports relating to the operations and growth of the company.

<u>Request 41</u> - Documents relating to meetings conducted by Rob Gorin concerning operation and growth of the company.

The documents ordered produced in regard to requests 36 and 37 satisfy requests 38 and 41.

\\\\\

<u>Request 44</u> - Board of Directors or Shareholder meeting minutes relating to performance of operation and growth of the company, as limited to the dental implant sales division.

Defendant stated at hearing that they have no responsive documents, and will submit a declaration to this effect. They are directed to do so within ten days of this order.

All documents ordered produced shall either be produced prior to the scheduled depositions in New York, or if produced after the depositions and are determined to be pertinent to the witness, defendants may be liable to pay for the expense of a second deposition.

C. <u>Deposition Questions</u>

Plaintiff claims that at upcoming scheduled depositions, he intends to ask questions pertaining to planned operations, as he testified at his own deposition that one of defendants' fraudulent representations concerned discussions of how the company would be run. Defendants have represented that they would not allow witnesses to answer questions regarding planned operations. Plaintiff wants to resolve the issue now so he will not have to return to New York a second time.

The court explained at hearing that it could not make a speculative ruling, but offered to be available by telephone if an issue arose during the depositions. The parties were admonished about instructing witnesses not to answer in the absence of a bona fide privilege assertion.

D. <u>Addresses of Former Employees</u>

At hearing, plaintiff raised the issue of his inability to get addresses of defendants' former employees. Plaintiff was directed to give defendants a list of former employees, and defendants were ordered to provide their last known addresses.

\\\\\

\\\\\

\\\\\

CONCLUSION

In accordance with the terms within this opinion, IT IS ORDERED that:

1. Plaintiff's motion to compel is granted in part and denied in part.

2. Defendants shall provide the documents as described above within ten days of this order;

3. Defendants shall file and serve declarations regarding representations made in court and outlined in this order within ten days of this order.

DATED: 4/5/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH/076
Whittall1629.dsy.wpd